IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THELMA ROPER,

    Plaintiff,

v.

                                  Civil No. 23-2112-BAH

OLIPHANT FINANCIAL, LLC, ET AL.,

    Defendant.

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Thelma Roper brought suit against Oliphant Financial, LLC and Stillman P.C. (collectively "Defendants") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Maryland Consumer Debt Collection Act, Md. Code Ann. Com. L. § 14-201 et seq. ("MCDCA"), and the Maryland Consumer Protection Act, Md. Code. Ann. Com. L. § 13-101 et seq. ("MCPA"). ECF 4. Pending before the Court is Defendants' Motion to Compel Arbitration (the "Motion."). ECF 17. Plaintiff filed an opposition, ECF 18, and Defendants filed a reply, ECF 23. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' Motion is **DENIED**.

**I.    BACKGROUND**

A. Factual Background

On or about August 24, 2016, Plaintiff obtained a personal loan (the "Loan") in the amount of $16,900 through a website operated by LendingClub Corporation ("LendingClub"), an online

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

marketplace that connects borrowers and investors. ECF 17-2, at 46; ECF 17-1, at 1. The Loan was issued by WebBank. *Id.*

Of relevance to the pending motion to compel, before receiving the Loan, borrowers are required to e-sign a Borrower Agreement by checking a box signifying their electronic consent to the terms. ECF 17-3, at 3 ¶ 9. Specifically, paragraph 20 of the Borrower Agreement provides, in relevant part, that "[e]ither party to this agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this Section 20 ('the Arbitration Provision.')." ECF 17-2, at 32.

Within three days of the Loan being issued, WebBank transferred the Loan to LendingClub. ECF 17-3, at 4 ¶ 16. LendingClub then assigned the Loan to Wilmington Savings Fund Society ("WSFS"). *Id.* ¶ 17. On March 23, 2018, the Loan was sold and assigned to Oliphant by LendingClub, acting as power of attorney on behalf of WSFS. *Id.* ¶ 19.

After Oliphant acquired the Loan, Plaintiff defaulted on the Loan. ECF 4, at 2 ¶ 3. Plaintiff's last payment on the account was on October 23, 2017, and the account was charged off on February 28, 2018. *Id.* On November 22, 2022, Oliphant brought a debt-collection action against Plaintiff in the District Court of Maryland for Prince George's County. *Id.* ¶ 2. Plaintiff filed a motion to dismiss alleging that the claim was barred by the statute of limitations and alleging that the claim was expressly prohibited by law. ECF 18-3, at 1–2. The court granted the motion to dismiss after finding that Defendants failed to file the claim within the statute of limitations. ECF 18-5. Plaintiff now alleges that filing a debt collection lawsuit beyond the statute of limitations violated various Maryland consumer protections laws. ECF 18, at 2.

B. Procedural History

Plaintiff commenced this putative class action in the Circuit Court for Prince George's County on July 6, 2023. ECF 4. Defendants removed the case to this Court on August 4, 2023. ECF 1 (notice of removal). On January 16, 2024, Defendants filed a motion to compel arbitration and to either dismiss or stay this matter. ECF 17. Thereafter, Plaintiff filed a response in opposition to Defendants' motion on January 30, 2024. ECF 18. On February 2, 2024, Defendants filed a motion to stay all discovery pending resolution of the motion to compel. ECF 21. On February 8, 2024, Defendants filed a reply to Plaintiff's opposition to the motion to compel. ECF 23. Plaintiff then filed a response in opposition to Defendants' motion to stay discovery on February 16, 2024. ECF 25. On February 19, 2024, Defendants filed a reply to Plaintiff's opposition. ECF 27. On March 12, 2024, the Court granted Defendants' motion to stay pending resolution of the motion to compel arbitration. ECF 30.

## II. **LEGAL STANDARD**

A. Fed. R. Civ. P. 56

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See, e.g., Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered") (internal citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return

3

a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). However, the Court may rely only on facts supported in the record. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The Court may not rely upon unsubstantiated assertions in the pleadings. *Id.*

B. The Federal Arbitration Act

Under Section 2 of the Federal Arbitration Act (FAA), an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While Section 2 has been interpreted as "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the Supreme Court has been careful to clarify that "arbitration agreements are as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

4

agreement." *Id.* But, if the "making of the arbitration agreement" is at issue, "the [C]ourt shall proceed summarily to the trial thereof." *Id.*

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets in original). And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate").

The Fourth Circuit has also explained that "[i]n view of [courts'] gatekeeping function, the scope of a motion to compel arbitration is restricted to consideration of challenges specific to the arbitration clause." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 184 (4th Cir. 2013) (citation omitted). However, the issue of waiver should be decided by the court. *See Holloman v. Consumer Portfolio Servs*, Civ. No. 23-134-RDB, 2023 WL 4027036, at *n. 2 (D. Md. June 15, 2023) ("[T]here is general consensus that allegations of waiver by participation in litigation should be determined by the court, not referred to an arbitrator.") (internal citations omitted). As such, this Court will first consider whether the parties formed an agreement to arbitrate and if so, whether Defendants waived the right to arbitrate by participating in prior litigation.

### III. ANALYSIS

Defendants move to compel Plaintiff to arbitrate the claims on a non-class basis pursuant to the parties' Borrower Agreement and to dismiss (or stay) this matter pursuant to the FAA. *See*

5

ECF 17. Plaintiff counters that Defendants cannot compel her to arbitrate because Defendants: 1) waived the right to compel arbitration by previously commencing a debt-collection lawsuit against Plaintiff; 2) failed to provide sufficient evidence that an arbitration agreement exists; and 3) failed to prove that Defendants are parties to the agreement to arbitrate. *See* ECF 18.

This Court finds that Plaintiff and Defendants initially entered into a valid arbitration agreement, Defendants sufficiently authenticated the Borrower Agreement, and Defendants are contemplated by the Borrower Agreement as a subsequent holder of the Loan. However, the Court further finds that Defendants waived their right to arbitrate this case because the claim at issue is sufficiently related to the claim that was previously litigated in state court. Accordingly, the Court: (1) denies Defendants' motion to compel arbitration; and (2) sets aside the order to stay discovery.

### A.     The Parties Have Entered into a Valid Arbitration Agreement

As an initial matter, the parties appear to agree that Plaintiff applied for and received a Loan from WebBank in August 2016. ECF 17-1, at 2; ECF 4, at 2. Thus, the Court first considers whether, in connection with this Loan, the parties entered into an agreement with a valid and enforceable arbitration provision. *Murray v. United Food & Commercial Workers Int'l Union,* 289 F.3d 297, 302 (4th Cir. 2002) (the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement") (citation omitted).

The plain language of the Borrower Agreement contains an arbitration provision which provides, in relevant part, that: "[e]ither party to this agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this Section 20 ('the Arbitration Provision.')." ECF 17-2, at 32. According to Daniel Laux, Vice President of Legal Outsourcing for Oliphant, once an applicant is approved for a loan, the applicant is presented with the Borrower Agreement, along

with various other documents, to e-sign by checking a box signifying electronic consent. ECF 17-3, at 3 ¶ 9. Laux affirmed that "LendingClub is a web-driven and automated system, and it is not possible for an individual to receive a loan from LendingClub without agreeing to the Borrower Agreement . . ." *Id.* ¶ 11. Plaintiff does not deny applying for or receiving the Loan, however Plaintiff argues that there is no document that purports, on its face, to be signed by Roper. ECF 18, at 8. Moreover, Plaintiff argues that Laux's affidavit contains hearsay and therefore should not be considered. *Id.* Specifically, Plaintiff argues that Laux "speculat[ed] about what occurred in this specific case based on some generalized training" regarding the loan application process but has "no personal knowledge of any facts in this case." *Id.*

It is well-established that "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; instead, the party must identify specific evidence demonstrating a material factual dispute." *S. Elec. Servs. Inc. v. Cornerstone Detentions Prods., Inc.*, No. 10-CV-76, 2010 WL 2233664, at *3 (W.D. Va. June 3, 2010) (*citing Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). Plaintiff does not deny that she signed the agreement or received the funds; rather, she carefully claims that there is no document that purports to have her signature on it. ECF 18, at 7–8. But the FAA does not require signatures in order for an arbitration agreement to be enforceable. *See Soucie v. Va. Util. Prot. Serv., Inc.*, No. 22-CV-552, 2023 WL 2991487, at *8 (W.D. Va. April 18, 2023) ("The FAA does not expressly require an agreement to arbitrate be signed to be enforceable; it only requires that the agreement be 'in writing.'" (citing 9 U.S.C. § 2)). And in any event, Plaintiff does not offer "specific evidence to refute that she electronically signed the arbitration agreement." *Jacobs v. Quest Diagnostics, Inc.*, No. 7:23-CV-00126, 2023 WL 5278712, at *4 (W.D. Va. Aug. 16, 2023). In the absence of reliable evidence refuting Laux's affidavit, which, along with other substantial documentation, attests to a

7

contractual relationship with Plaintiff, the Court finds that the parties entered into the Borrower Agreement, which contains a valid and enforceable arbitration provision.

Plaintiff also raises evidentiary issues related to Laux's affidavit, namely that the declaration contains hearsay because the facts alleged are not based on Laux's personal knowledge. ECF 18, at 8. Federal Rule of Evidence 901(a) provides: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The burden of establishing the authenticity of a particular document is a light one. *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high—only a prima facie showing is required."). All that is required is sufficient evidence so that a jury could reasonably find that a document was authentic. *Id.* However, supporting and opposing affidavits must be made on personal knowledge with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4). Employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence. Fed. R. Evid. 803(6); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006); *FDIC v. Patel*, 46 F.3d 482, 484 (5th Cir. 1995).

Laux's declaration reveals that as part of his duties and responsibilities as Vice President of Legal Outsourcing at Oliphant, he is "familiar with Oliphant's business practices and procedures regarding the services it provides its customers and its record-keeping systems related to individual accounts including the manner in which its records are created and maintained." ECF 17-3, at 4 ¶ 12. Further, Laux received training from LendingClub Corporation on the loan application

process, which included "information an individual must supply when applying for a loan from LendingClub and the process by which an individual applies for a loan from LendingClub." *Id.* at 2 ¶ 3. While it is true that Laux did not have personal knowledge of the records in that he did not personally take part in or witness the creation of the documents, his declaration was based on his personal knowledge as the custodian of the records he maintained at Oliphant and the information he learned from his training experience. Similarly, Laux's assertions that "it is not possible for an individual to receive a loan from LendingClub without agreeing to the Borrower Agreement," and that Plaintiff was approved and issued a loan on August 24, 2016, is information derived directly from Laux's formal training on LendingClub's application process and his familiarity with Oliphant's business and record-keeping practices. ECF 17-3, at 3–4 ¶¶ 11, 15. Accordingly, the statements in Laux's declaration are based on his personal knowledge and comply with the relevant Rules of Evidence and Civil Procedure. The declaration, along with the supporting documentation, confirms that the parties entered into a valid arbitration agreement.

**B.     Defendants Have Shown That They May Enforce the Arbitration Agreement**

Plaintiff's argument that Defendants cannot enforce the arbitration agreement because they are not parties to the Borrower Agreement is also unconvincing. While Oliphant and Stillman P.C. (Oliphant's attorneys) are not parties to the Borrower Agreement, Defendants have shown that Oliphant is a "subsequent holder" under the terms of the agreement and that Oliphant may enforce the right to compel arbitration in paragraph 20.

In this regard, paragraph 20(a) makes clear that "[e]ither party to this Agreement, *or any subsequent holder*, may," compel arbitration. ECF 17-2, at 32–33 (emphasis added). Laux's Declaration explains that initially, Plaintiff's Loan was issued by WebBank on August 24, 2016. ECF 17-3, at 4 ¶ 15. Within three days of the Loan being issued, WebBank transferred the Loan

9

to LendingClub. *Id.* ¶ 16. LendingClub then assigned the Loan to Wilmington Savings Fund Society ("WSFS"). *Id.* ¶ 17. On March 23, 2018, the Loan was sold and assigned to Oliphant by LendingClub, acting as power of attorney on behalf of WSFS. *Id.* ¶ 19. Oliphant received full title to the Loan, including all rights and obligations under the Loan. *Id.* ¶ 20. Accordingly, Defendants have explained the chain of title for Plaintiff's Loan from the date of origination until Oliphant acquired the Loan in 2018. Plaintiff argues that "the chain of title sworn to by [] Laux differs materially from the chain of title sworn to by [] Thompson" in the underlying debt collection action, thus "flatly contradict[ing] Oliphant's earlier affidavit" and defeating summary judgment. ECF 18, at 9. However, the fact that Laux's declaration includes more detail than the Assigned Consumer Debt Checklist in the underlying debt collection action does not change the analysis. Both documents indicate that Oliphant obtained title to the Loan, and therefore, there is no material discrepancy sufficient to defeat the instant motion.

Laux's declaration also makes clear that LendingClub was a party to each of the loan transfers and that LendingClub can establish the chain of title for the Loan. ECF 17-3, at 4 ¶ 15-19. Thus, this Court is satisfied that Defendants have shown that Oliphant is a "subsequent holder" under the Borrower Agreement, with the right to seek to compel arbitration in this matter.

### C. Plaintiff Has Shown that Defendants Waived the Right to Arbitrate

While there is a valid arbitration agreement, the Court finds that Defendants waived the right to compel arbitration by previously commencing a debt-collection lawsuit against Plaintiff in state court and litigating the central claim at issue in this case to conclusion. To waive the right to arbitration, Defendants must: 1) know of an existing right to arbitration; and 2) act inconsistently with that right. *Morgan*, 596 U.S. at 415. It is undisputed that Oliphant previously commenced a debt-collection action against Plaintiff regarding the Loan in the District Court of Maryland for

Prince George's County on November 22, 2022. ECF 4, at 2 ¶ 2; ECF 17-1, at 9; ECF 18, at 2. Given this, Oliphant, as a subsequent holder of the Loan, must have known of its right to arbitration under the Borrower Agreement. Indeed, Defendants appear to concede as much. *See* ECF 23, at 3 ("Plaintiff alleges Defendants knew of the arbitration provision prior to the commencement of this lawsuit. Even if that is accurate, Plaintiff still cannot show that Defendants acted inconsistently with that right." (internal citation omitted)). Accordingly, the Defendants knew of an existing right to arbitration when the state court lawsuit was initiated, so the analysis hinges on whether Defendants acted inconsistently with that right.

The Court ultimately agrees with Plaintiff that Defendants acted inconsistently with their right to compel arbitration by commencing the debt-collection action and litigating that action to its conclusion. Under Maryland law, a waiver of a right to arbitrate may result from either an express agreement or be inferred from other circumstances.[2] *See Cain v. Midland Funding*, 156 A.3d 807, 815 (Md. 2017). To make such a waiver without an express agreement, the party must act inconsistently with an intent to insist upon enforcing the arbitration agreement. *Id.* To determine whether Defendants acted inconsistently with its right to arbitrate here, the Court considers: (1) whether a right to arbitrate the claims that were litigated in state court existed; and

---

[2] Defendants argue that the *Cain* analysis is inapplicable to cases arising under the FAA. *See* ECF 23, at 1-2 (citing cases). However, as Judge Bennett noted in *Holloman,* those prior decisions are "immaterial in light of the Supreme Court's decision in *Morgan.*" 2023 WL 4027036, at *n. 3. Before *Morgan,* which held that courts may not "condition a waiver of the right to arbitration on a showing of prejudice," 596 U.S. at 417, the waiver standard under the FAA was much narrower and thus judges in this District frequently opted not to apply *Cain* to applications enforcing arbitration under the FAA. *Holloman,* 2023 WL 4027036, at *n.3 (collecting pre-*Morgan* cases applying the FAA's prejudice requirement). However, following *Morgan*, "this District has followed *Cain*—which, to be clear, was decided under the Maryland Uniform Arbitration Act—as to whether a choice to litigate is inconsistent with the right to arbitrate under the FAA." *Id.* (citing *Ford v. UHG I, LLC*, No. 22-CV-840-LKG, 2023 WL 2185751 (D. Md. Feb. 23, 2023)). As such, *Cain* provides the correct framework for the claim.

(2) whether the claims sought to be compelled to arbitration in this case are "related" to the claims litigated in state court. *Id.* at 815–17.

The Borrower Agreement contains an arbitration provision which provides, in relevant part, that: "[e]ither party to this agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this Section 20 ('the Arbitration Provision.')." ECF 17-2, at 32. Paragraph 20(a) broadly defines the types of claims covered by the arbitration agreement:

> any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any subsequent holder (or persons claiming through or connected with us and/or the subsequent holders), on the other hand, relating to or arising out of this Agreement . . . Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise.

*Id.* at 33. Therefore, as the Borrower Agreement makes clear, Oliphant had the right to arbitrate its debt-collection claims against Plaintiff under the broad arbitration provision in the Borrower Agreement, but explicitly chose not to do so by filing suit in state court seeking to collect the debt purportedly owed by Plaintiff.

Moreover, the FDCPA, MCDCA, and MCPA claims in this action are sufficiently related to the claims in the prior debt-collection to show that the Defendants waived the right to compel arbitration. "[W]aiver does not extend to any unrelated issues arising under the contract" and waiver only extends to other disputes when "all of the parts of the dispute [are] deemed to be interrelated." *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 450 A.2d 1304, 1307–09 (Md. 1982); *see also Cain*, 156 A.3d at 816–18. Claims are related when "*[t]he claim is in actuality part of one basic issue.*" *Charles J. Frank, Inc.*, 450 A.2d at 1309 (emphasis in original) (citation omitted).

Plaintiff correctly observes that the instant lawsuit involves "claims exclusively based on the conduct of the defendants in the state court collection action." ECF 18, at 6. Specifically, the basis for the instant lawsuit stems from Oliphant's commencement of the underlying debt-collection action outside the statute of limitations. *See* ECF 4, at 1–2 ¶ 1-12 (alleging that filing a consumer debt collection action beyond the statute of limitations is expressly prohibited by Maryland consumer protection laws). Defendants point to *Ford v. UHG I, LLC* in support of their argument that the "prior debt collection action claim, though it involves the same debt Plaintiff refers to in her Complaint, does not relate to this action such that the Plaintiff's action arises out of the Defendant's collection action claim." ECF 17-1, at 10 (citing *Ford*, 2023 WL 2185751, at *7). However, unlike *Ford*, where the Plaintiffs would have brought the action regardless of the underlying debt-collection suit because it involved matters that pre-dated the lawsuit,[3] *Ford*, 2023 WL 2185751, at *7, the instant case arises exclusively out of defendants' conduct in the prior litigation. Defendants initiated and fully participated in litigation surrounding the debt collection claim and suffered an adverse judgment. When the propriety of that litigation was challenged in this Court, Defendants, for the first time, invoked the arbitration provision as a defense even though the instant claim grows directly out of the adverse judgment in the previous suit. Put differently,

---

[3] In *Ford*, the plaintiff filed suit in federal court over "improper collection calls and letters" directed at the plaintiff in "late August or early September of 2021." *Ford*, 2023 WL 2185751, at *6. When defendants moved to compel arbitration, the *Ford* plaintiff argued, as Plaintiff does here, that the defendants "waived the right to compel arbitration by previously commencing a debt-collection lawsuit against [the] [p]laintiff in state court." *Id.* However, Judge Grigsby observed that the basis of the federal claim "pre-date[d] that [separate state debt-collection] litigation" by several months and addressed "certain illegal debt collection activities, including hiring a third-party debt collector that placed excessive calls and harassed" the plaintiff. *Id.* Though the court rightly acknowledged that the *Ford* plaintiff's claims did "involve" the loan at the heart of the prior debt-collection case, it ultimately found that "the claims in [the federal case] did not *arise* from the previous debt-collection litigation" because the *Ford* plaintiff "would have brought" the federal action "regardless of whether" the prior debt collection lawsuit had been filed in state court. *Id.* (emphasis added).

13

had Oliphant not initiated the debt collection lawsuit after the statute of limitations had run, there would be no basis for the instant lawsuit. Thus, the claims are clearly sufficiently related, and *Ford* is inapposite.

Like the Fourth Circuit, this Court is "mindful of the favored position that arbitration commands in our law." *Iraq Middle Market Dev. Found. v. Harmoosh*, 947 F.3d 234, 239 (4th Cir. 2020). However, the Fourth Circuit has also affirmed that "a party wishing to enforce its contractual right to arbitrate must invoke that right in a timely manner to preserve it." *Id.* Having failed to timely enforce its arbitration right when it sought to collect Plaintiff's debt in state court, Defendants may not attempt to belatedly do so here. Since the instant claim is part of the same "basic issue" that was litigated in state court, *Charles J. Frank, Inc.*, 450 A.2d at 1309, Defendants can no longer compel arbitration.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is denied and the order granting Defendants' motion to stay discovery pending the resolution of the motion to compel arbitration is set aside. The stay entered at ECF 30 is lifted and the case will proceed. The parties are asked to submit a joint proposed schedule with an accompanying order within twenty days.

A separate implementing Order will issue.

Dated: September 12, 2024

/s/
Brendan A. Hurson
United States District Judge

---

[4] Section 20(f) of the Arbitration Provision states, "[u]nless consented to in writing by all parties to the arbitration, *no party to the arbitration* may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction." ECF 17-2, at 33 (emphasis added). Because the class action provision is specific to arbitration and Defendants waived their right to arbitration, the clause barring class actions is inapplicable.